UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY R. SMITH,<br>           Plaintiff<br><br>v.<br><br>YELOFF REALTY CO., INC.,<br>           Defendant | CASE NO.: 1:07-cv-10076-PBS |

## CONSENT DECREE

IT IS HEREBY stipulated and agreed by and between the plaintiffs, Jeffrey R. Smith (hereinafter as the "plaintiff" or "Smith"), and the defendant, Yeloff Realty Co., Inc. (referred to hereinafter as the "defendant" or "Yeloff") and ordered by the Court as follows:

WHEREAS, Smith filed this action against Yeloff for alleged violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §12181, *et seq.*, pursuant to which he sought a permanent mandatory injunction and attorneys' and expert's fees, case expenses and costs;

WHEREAS, the defendant specifically denies the plaintiff's allegations in this action and the parties agree that the settlement of this action in no way constitutes an admission of liability of any kind by the defendant;

WHEREAS, the plaintiff and the defendant have agreed to a settlement of this action; and

WHEREAS, the aforementioned parties desire to avoid further expense, time, effort and uncertainty in regard to this action;

EXHIBIT A

NOW, THEREFORE, in consideration of the promises and the mutual covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, the parties agree to the following terms and conditions as full and complete settlement of this action:

Yeloff hereby represents to the plaintiff that it has made the alterations or improvements specified below or that Yeloff shall cause the following alterations and improvements to be made to the property which is the subject of this action, commonly known as J.J. Foley's Bar and Grille, 21 Kingston Street, Boston, Massachusetts (referred to hereinafter as the "facility" or the "property"):

**A.   ACCESSIBLE ROUTE FROM THE PUBLIC STREET**

1.   Currently, the main entrance to the facility is one step up from the adjacent public sidewalk. After entering the main exterior door, there are an additional six steps to the main service floor. The steps comply with the 7-inch riser/11-inch tread requirements of the ADA. Handrails are present at the required height range of 34-36 inches above the nosing, but do not include the required extensions at the top and bottom of the run (ADAAG 4.9.4, Fig. 19). While this permits access by certain persons with mobility disabilities, it does not permit a person in a wheelchair to access the facility.

2.   Within 60 days of the entry of this Consent Decree as an Order of the Court, the defendant shall enhance the existing handrails at the main customer entrance to include the extensions required by ADAAG 4.9.4, Fig. 19.

3.   The defendant hereby represents to the plaintiff and the Court that it plans to redesign the entire building to add a full service elevator, accessible bathrooms, and a path of access throughout the areas to which the public is invited. The defendant is

2

currently in the process of developing this project. The defendant estimates the approval process from the required authorities <u>and</u> completion of the design to take approximately (6) six months.

4.     In the event that the defendant does not complete the above-described redesign of the building and begin construction within 24 months of the entry of this Consent Decree as an Order of the Court or if the redesign does not include the addition of a wheelchair accessible entrance, the defendant shall be obligated to install an inclined stair lift at the main entrance. Said lift shall meet the requirements of ADAAG 4.11. Said lift shall be installed within 27 months of the entry of this Consent Decree as an Order of the Court if the defendant does not begin construction of the above-described redesign of the building within 24 months of the entry of this Consent Decree as an Order of the Court or if the redesign does not include the addition of a wheelchair accessible entrance.

**B.     RESTROOMS**

1.     There are currently three public restrooms, one for men and two for women; none are accessible.

2.     The redesign of the property referred to in Section A, paragraphs 3 and 4 above shall include as an Order of the Court that the defendant shall add a unisex accessible restroom near the existing female toilets at the rear of the dining room or suitable alternative location. Such redesign shall include doorways that provide 32 inches clear opening and the defendant shall install accessible (lever) door handles on the restroom doors.

3.     The unisex restroom shall comply with all applicable requirements of ADAAG 4.22 and 4.33.

3

C.  **TABLES AND BAR AREA**

1. Existing tables in the dining area are close to compliance in that they provide the correct knee clearance of 27 inches (actual of 28-1/2 inches) and width of 30 inches. These tables do provide parallel access at the ends however they do not provide the 19-inch depth before an obstruction (actual 15 inches or less) for a front approach (ADAAG 4.32.3 and 4.32.4).

2. The existing bar does not comply with ADAAG 5.2 as it does not provide a portion at 34 inches in height and the tables in that area are located in booths that do not provide accessibility.

3. The redesign of the property referred to in Section A, paragraphs 3 and 4 above shall include as an Order of the Court that the defendant shall replace tables in sufficient number to provide 5 percent of total seating in the bar area as accessible. This will include replacing some of the booths in the bar area which would not then require modifications to the existing bar itself. The estimated number of tables/booths is 20. Therefore, 5 percent of the total will require that the defendant provide one accessible table in the bar area. Within 120 days of the entry of this Consent Decree as an Order of the Court, the defendant shall provide one accessible table bar in the bar area.

4. Table service shall be available at the accessible table within the bar area in compliance with ADAAG 5.2.

4

## D. MISCELLANEOUS

1. The defendant shall make all reasonable efforts to complete the actions, alterations and modifications required by this Consent Decree within the times specified herein, provided that the defendant may seek to extend the period for additional time, if needed, by motion to the Court. Before filing such a motion, however, the defendant shall seek the plaintiff's assent and stipulation to the additional time requested; the plaintiff shall not unreasonably withhold his assent and stipulation. The defendant shall provide brief written periodic progress reports to the plaintiff's counsel concerning the status of the redesign project. The defendant's reports to the plaintiff shall be made at intervals of six (6) months, twelve (12) months, eighteen (18) months, and twenty-four (24) months following the entry date of this Consent Decree as an Order of the Court.

2. The defendant shall take all necessary steps to obtain the appropriate permits from the City of Boston in time to complete all work within the times specified herein.

3. The parties are unable to ascertain with specificity the value of damages that the plaintiff will incur in the event the defendant breaches the terms of this Consent Decree. Accordingly, the parties agree that in the event that the alterations and modifications required hereby are not timely completed in all respects, the plaintiff shall have the right to petition the Court for payment by the defendant of liquidated damages until such time as the required alterations and modifications are completed. The appropriate amount to be awarded will be determined by the Court in relation to the severity of the defendant's non-compliance with its Order and breach of the parties' agreement. The plaintiff shall be entitled to an award and to obtain injunctive relief from the Court to compel compliance with the terms of this Consent Decree. Additionally, in the event the

modifications and alterations are not completed by within the times specified hereunder, the plaintiff shall have the right to petition the Court to require the defendant to pay all additional attorneys' and expert's fees and costs incurred by the plaintiff subsequent to the execution and docket entry of this Consent Decree.

4.  Within 10 business days following the Court's entry of this Consent Decree on the docket as an Order of the Court, plaintiff shall submit an itemized bill to defendant in an amount intended to settle the plaintiff's claims for attorneys' fees, litigation expenses and expert costs incurred by the plaintiff in this matter. The amount to be paid shall be agreed by discussion and not unreasonably withheld under a Separate Letter Agreement and that amount shall remain confidential. The plaintiff specifically reserves his right to petition the Court for an award of fees and expenses if the parties cannot settle the issue by discussion.

5.  The plaintiff's itemized bill for legal services and expert assistance referred to in the preceding paragraph shall not be disclosed to anyone other than the attorneys, financial advisors and accountants of the defendant, except by express written consent of the plaintiffs or except as may be necessary in connection with a fee petition hearing with the Court or ADR proceeding.

6.  In the event that a third party seeks to discover the itemized bill provided to the defendant under this Consent Decree, the defendant agrees that it will provide advance written notice to the plaintiff in a timely fashion, so that the plaintiff may take steps to protect the confidentiality of the aforesaid itemized bill.

7.  The defendant, its agents, attorneys, and representatives understand and agree that the itemized bill provided by the plaintiff under this Consent Decree is confidential and is

being furnished solely for the purpose of negotiating a settlement of the fees and expenses associated with the above-captioned civil action and is not to be used for any other purpose, duplicated or made available to any other person or entity without the express written consent of the plaintiffs and their undersigned attorneys or as is provided above.

8. To the extent that the itemized bill provided to the defendant under this Consent Decree may refer to privileged attorney-client communications or to any written materials, notes of conversations or investigations, or other materials directed toward preparation of the plaintiff's case, the defendant agrees not to request production of such written materials in connection with the settlement of the fees and expenses associated with the above-captioned case. However, in the event that the issue of fees and expenses is not promptly resolved by negotiation and the issue is subjected to mediation or other ADR procedure or is submitted to the Court for adjudication, the plaintiff agrees that defendant may request the production of such information subject to mutually-acceptable limitations or, if the parties cannot agree to the scope of such discovery, to any conditions imposed by Court order.

9. The Separate Letter Agreement *referred to in paragraph 4 above* shall not be disclosed to anyone other than the attorneys and accountants of the parties to this Consent Decree, except by express written consent of the parties to this Consent Decree or as required by law, as required to enforce the terms of this Consent Decree or pursuant to an order of any Court.

10. In consideration of the Separate Letter Agreement referenced in the preceding paragraph and in consideration of the actions undertaken or to be undertaken by the

defendant under the terms of this Consent Decree, the plaintiff, his past, present and future officers, directors, employees, agents, attorneys, partners, principals, subsidiaries, affiliates, divisions, parents, predecessors, successors, heirs, members and assigns, hereby releases and forever discharges the defendant, jointly and severally, its past, present and future officers, directors, trustees, beneficiaries, employees, agents, attorneys, partners, principals, subsidiaries, affiliates, divisions, parents, predecessors, successors, heirs and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, claims and demands whatsoever, in law or equity, whether known or unknown, foreseen or unforeseen, that plaintiff has ever had, or hereafter can, shall, or may have, against the defendant, including under Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et seq. from the beginning of the world to the date of this Consent Decree. The release language within this paragraph is otherwise intended to release the defendant from all claims that were made or could have been made under the Complaint.

11. The parties further acknowledge, represent, covenant and warrant that the obligations imposed by this Consent Decree shall be forever binding, and that this Consent Decree may not be modified, amended, annulled, rescinded or otherwise changed unless in writing signed by authorized representatives of the plaintiffs and the defendant, which expressly refers to this Consent Decree. There are no verbal agreements or understandings between the parties that are not expressed within the text of this Consent Decree. All substantive changes to this Consent Decree must be in writing and endorsed by the parties and the Court.

12. The parties shall confirm in writing all extensions of deadlines for completion of work required under the Consent Decree; the Court need not endorse such extensions of time.

13. The plaintiff acknowledges, represents, covenants and warrants that he has not made any assignment of any right, claim, or cause of action covered by the release language in the preceding paragraph 5 above to any individual, corporation, or any other legal entity whatsoever.

14. The parties understand and agree that the release and discharge language in paragraph 10 above does not apply to any alleged breaches of this Consent Decree that may occur in the future.

15. The parties stipulate and represent that they have the power and authority to execute and deliver this Consent Decree and to perform its obligations hereunder.

16. The parties also shall file a joint notice indicating that the matter has been settled and requesting that the matter be dismissed, with prejudice, subject to the Court retaining jurisdiction only for enforcement purposes.

17. This Consent Decree shall become effective as of the date that all of the signatories have signed the Consent Decree and the date when the Court has endorsed it as an Order of the Court.

18. This Consent Decree may be executed by each party in separate counterparts, each of which shall be deemed an original and constitute one document.

_Nicholas S. Guerrera_
Jeffrey R. Smith, Plaintiff, by his Attorney
Nicholas S. Guerrera, Esq.
Dated: Sept. 20, 2007

9

_____
Yeloff Realty Co., Inc., by its Attorney,
Robert H. Quinn, Esq.
Dated: Sept. 20, 2007

So Ordered by the Court:

_____
Judge Patti B. Saris, U.S. District Court
District of Massachusetts
Dated: 9/21/07

10